SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN BERNARDINO

________________________________

NICHOLAS ALAN HOLLEY,

Plaintiff,

v. Case No. CIVSB2509476

DYNCORP INTERNATIONAL LLC; AMENTUM HOLDINGS, INC.; AMENTUM GOVERNMENT SERVICES HOLDING, LLC; AMENTUM COMMERCIAL OPERATIONS, INC.; CAMERON VAUGHN; CALVIN MERRITT; AND DOES 1 TO 100, INCLUSIVE,

Defendants.

________________________________

VIDEOTAPED DEPOSITION OF

NICHOLAS ALAN HOLLEY

DATE: Tuesday, September 30, 2025

TIME: 9:02 a.m.

LOCATION: Remote Proceeding

Phelan, CA 92371

OFFICIATED BY: Noelle Allen

JOB NO.: 7544601

EXHIBIT A

PAGES 43-47, 150-159, 222-224 ARE CONFIDENTIAL

A P P E A R A N C E S

ON BEHALF OF PLAINTIFF NICHOLAS ALAN HOLLEY:

ALLEN SAYLOR, ESQUIRE (by videoconference)
Shegerian & Associates Inc
11520 San Vicente Boulevard
Los Angeles, CA 90049
asaylor@shegerianlaw.com
(310) 960-0770

ON BEHALF OF DEFENDANTS DYNCORP INTERNATIONAL, LLC; AMENTUM HOLDINGS, INC.; AMENTUM GOVERNMENT SERVICES HOLDING, LLC; AMENTUM COMMERCIAL OPERATIONS, INC.; AMENTUM GOVERNMENT SERVICES; AMENTUM N&E HOLDINGS, LLC; AMENTUM SERVICES, INC; CALVIN MERRITT; AND CAMERON VAUGHN:

HEATHER D. HEARNE, ESQUIRE (by videoconference)
The Kullman Firm, PLC
10233 South Parker Road, Suite 300
Parker, CO 80134
hdh@kullmanlaw.com
(225) 906-4245

A P P E A R A N C E S (Cont'd)

ALSO PRESENT:

Brittany Rohan, Videographer, Veritext Legal Solutions (by videoconference)

Lucy Halatyn, In-House Counsel, Amentum (by videoconference)

Calvin Merritt, Defendant (by videoconference)

Cameron Vaughn, Defendant (by videoconference)

# I N D E X


| EXAMINATION: | PAGE |
|---|---|
| By Ms. Hearne | 7 |


## E X H I B I T S


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Nicholas Holley Resume | 38 |
| Exhibit 2 | DynCorp International Pay Stubs | 38 |
| Exhibit 3 | DynCorp International W-2 Forms | 39 |
| Exhibit 4 | Confidential | 42 |
| Exhibit 5 | Letter of Suspension, 12/04/20 | 51 |
| Exhibit 6 | Workers' Compensation New Claim Acknowledgement | 105 |
| Exhibit 7 | Report of Occupational Injury or Disease | 106 |
| Exhibit 8 | Urgent Care Records | 108 |
| Exhibit 9 | Confidential | 150 |
| Exhibit 10 | Email, 1/10/2023 | 167 |
| Exhibit 11 | Grievance, TI Inspector Position | 170 |
| Exhibit 12 | Collective Bargaining Agreement | 198 |
| Exhibit 13 | Termination of Employment Memorandum, 4/11/24 | 216 |
| Exhibit 14 | Confidential | 221 |
| Exhibit 15 | Grievance Form, Termination Grievance Form | 226 |

E X H I B I T S (Cont'd)


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 16 | Photograph, Helicopter | 230 |
| Exhibit 17 | Company Grievance Response | 231 |
| Exhibit 18 | Facebook Post | 247 |
| Exhibit 19 | Plaintiff's Responses to Employment Form Interrogatories, Set One | 250 |


QUESTIONS INSTRUCTED NOT TO ANSWER

| PAGE | LINE |
|---|---|
| 66 | 9 |
| 238 | 9 |

P R O C E E D I N G S

THE OFFICER: Good morning. My name is Noelle Allen. I'm the deposition officer assigned by Veritext to take the record of this proceeding. We are now on the record at 9:02 a.m. Pacific Time.

This is the deposition of Nicholas Alan Holley, taken in the matter of Nicholas Alan Holley vs. DynCorp International, LLC, et al. on Tuesday, September 30, 2025, in Phelan, California 92371.

I'm a notary authorized to take acknowledgements and administer oaths in California. Parties agree that as a deposition officer, I will swear in the witness remotely.

Additionally, absent an objection on the record before the witness is sworn, all parties and the witness understand and agree that any certified transcript produced from the recordings of this proceeding:

- is intended for all uses permitted under applicable procedural and evidentiary rules and laws in the same manner as a deposition recorded by stenographic means; and
- shall constitute written stipulation of such.

This proceeding will be recorded via video technology by Brittany Rohan.

Okay, Counsel, will you now please state your appearances for the record, starting with the noticing attorney.

MS. HEARNE: Good morning. Heather Hearne on behalf of the defendants in this matter.

MR. SAYLOR: Good morning. Allen Saylor on behalf of the plaintiff.

THE OFFICER: Okay, I will swear you in, Mr. Holley. Please raise your right hand.

WHEREUPON,

NICHOLAS ALAN HOLLEY,

called as a witness and having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

THE OFFICER: Okay. We may begin.

EXAMINATION

BY MS. HEARNE:

Q What are the tattoos on your arm? Are those shell casings?

A Yes, ma'am, it's my military service.

Q Got you. Okay. Sorry, that one caught my eye. Hi, my name is Heather, as you just heard. I am counsel for the defendants with The Kullman Firm. I

Q Do you have any children?
A I have two stepchildren, ma'am. And one biological.
Q How old are they?
A My oldest stepdaughter is 22, my stepson is 18 and my biological is 12.
Q Is the 12-year-old a boy or a girl?
A It's a girl.
Q I have 11-year-old girls and a 13-year-old girl. A lot of hormones at that -- okay, and where do you live currently?
A I currently live in Phelan, California, ma'am.
Q The address please?
A [redacted] [sic].
Q The rest of the address, please?
A I'm sorry, I'm -- I'm trying to recall my physical address, ma'am. I use my mailing address for everything.
Q Oh, okay.
A To be honest with you, I'd have to go check. It's [redacted] Phelan, P-H-E-L-A-N, California 92371.
Q How long have you lived there?
A I bought this house in November of 2017, ma'am.

Barstow-Daggett location. Is that correct?

A Yes, ma'am. It's a detachment of Fort Irwin. It's commonly referred to as Fort Irwin.

Q Okay. So you understood my questions when I was referring to Fort Irwin, I was referring to the work location for DynCorp?

A Yes, ma'am. Yes, ma'am. I -- I did.

Q Okay, thank you. You also have a hostile work environment claim against Cameron Vaughn?

A Yes, ma'am.

Q Is the factual basis for your hostile work environment claim against Cameron Vaughn the same as the factual basis for your intentional infliction of emotional distress claim?

A The basis for it, yes, ma'am.

Q Are there any additional things that Mr. Vaughn said or did beyond what you've already told me related to the intentional infliction of emotional distress claim? Are there any additional things that Mr. Vaughn said or did that you believe created a hostile work environment for you at DynCorp?

A No, ma'am. Not to my knowledge.

Q Why do you believe Mr. Vaughn got in your face and yelled at you in January of 2023? And that may be a confusing question. Like, what do you -- why do you

think he did that? I know -- I'm not asking -- let me see if I can word that in a way that makes sense for you. What do you believe his motivation was? Why do you think he acted that way?

A I don't know why he would act that way, ma'am. I know the circumstances surrounding it, but I don't know why he would act that way.

Q Do you think it had anything to do with a disability that you suffer from?

A No, ma'am.

Q Do you think it has anything to do with your -- and I'm just going to list a couple and tell me if any of them -- you think it might be something to do with that, like your race or your color? Your gender?

A I have no idea, ma'am.

Q I'm sorry?

A No, ma'am. I said I have no idea, ma'am.

Q Do you think it had anything to do with your religion?

A I very much believe that he was against when I started speaking religion around -- with his employees, but I don't know whether that was his motivation to being in my face.

Q Do you have any reason to think that he was behaving that way because of your religion?

A I have no idea, ma'am.
Q Well, you said you did not become active in your church until November 2023, so ten months after that incident; correct?
A Activity versus speaking about religion in the workplace is different, ma'am.
Q Okay, so I am entitled to an answer. Do you think that the January 2023 incident where he got in your face and said he would handle me, do you think he did that because of your religion?
A Possibly not, ma'am. I have no idea.
Q Okay. Do you think he did it because of your ancestry or national origin?
A No, ma'am.
Q Your age?
A No, ma'am.
Q Your sexual orientation?
A No, ma'am.
Q Your gender identity or expression?
A No, ma'am.
Q Any medical conditions you have?
A Not to my knowledge, ma'am. No.
Q Your genetic information?
A No.
Q Marital status?

A No, ma'am.
Q Military or veteran status?
A No, ma'am.
Q Your reproductive health decision making?
A No, ma'am.
Q Your -- any family leave that you've taken?
A No, ma'am.
Q Any prior complaints that you'd made?
A Prior complaints I had made, yes, ma'am.
Q So you think that he did that in 2023 because of prior complaints that you made?
A Yes, ma'am.
Q What prior complaints do you think were the motivation behind that?
A I filed a grievance for an individual being hired over me with the union.
Q Why do you think Cameron Vaughn was aware of that?
A Because he, while in my face, screamed to keep his people's name out of my mouth and I had just filed the grievance.
Q Who did you file the grievance -- who was hired over you?
A I'd have to look to see the name again, ma'am. I don't remember his name right off the bat but they

were very close friends.

Q Is his name Brett?

A Yes, Holland I believe is his last name.

Q Why do you believe they were close friends?

A Because they were always together, ma'am. Both at work and then talking about being together outside of work.

Q And so just so I'm clear, the reason you believe the 2023 incident where he got in your face and said he would handle you -- strike that.

Let me ask that in a more articulate way. You believe Mr. Vaughn's conduct in January 2023 of getting in your face and saying he would handle you was because you had previously filed a grievance that Brett Holland was hired for a position that you applied for?

A Yes. A position that Calvin -- that Cameron Vaughn assisted him in getting because he worked -- at that point of being hired, he worked for Cameron.

Q How do you know that Cameron Vaughn insisted that Brett Holland get that?

A He was actively talking about it at work.

Q Do you know if Cameron Vaughn actually had any input in deciding who was hired for a position?

A Yes.

Q How do you know that he has input?

A Calvin Merritt would ask him who he felt needed to be in there. That's how previous TIs had been hired.

Q Isn't it true that pursuant to the terms of the collective bargaining agreement, elevation to different positions is based on qualifications and seniority?

A That's what the paperwork says, ma'am.

Q But you don't believe that's how it worked in practice?

A Not at all, ma'am.

Q What was the result of your grievance?

A It was ignored.

Q When you say it was ignored, do you mean that you didn't get the outcome you wanted or do you mean something else?

A I believe that no action was taken and I was never contacted back in regards to my grievance.

Q Is there any other reason why you believe that your grievance was a motivating factor in Cameron's conduct in January 2023?

A No, ma'am.

Q Okay. Remember that long list I read to you, race, color, gender, religion, ancestry, age, all that stuff where you were like, no, no, no, no, no?

A I'm aware of them, yes, ma'am.
Q Right.
A Whether I remember all of them or not, no, I do not.
Q And that's fine. Were any of those -- and I'm happy to repeat the list if you'd like me to. Were any of those, do you believe the reason why Mr. Vaughn wrote what you said were false statements in the QES System attributing them to you?
A Yes, ma'am. I believe it was actively because I filed that grievance and felt that I should have been in the TI shop instead of Brett Holland.
Q Okay. So your filing of the grievance, you believe that was the sole motivation for both the January 2023 conduct and the QES allegation?
A I believe -- I believe that was the initial motivation and then it continued on from there, ma'am.
Q Why do you -- and were there additional motivations once it continued on?
A Any form of disagreement with his opinion or his statement, he took personally, ma'am. And so that became more fuel for the fire.
Q During what period of time did he put the information in the QES System and write it -- and attribute it to you?

graded repair schedule.

Q Is phase team considered a promotion from unscheduled?

A No, ma'am.

Q Does it require greater skill?

A Yes, ma'am.

Q Is lead considered a promotion from unscheduled?

A Both unscheduled and phase have leads, ma'am.

Q Were you a lead on unscheduled?

A Yes, ma'am.

Q Okay. Did you get any additional pay when you became phase team lead from unscheduled lead?

A No, ma'am.

Q All right. Aside from making you phase team lead and as you said, giving you a team that was not experienced, did Mr. Merritt do anything else to intentionally inflict emotional distress on you?

A He regularly reminded me that phase was the only graded maintenance by the U.S. Army. It's the only thing that the U.S. Army is judging us on.

Q Why -- in what way would that intentionally inflict emotional distress on you?

A Because that firmly enforced the deadlines which I had to complete. Further putting more stress

and more emotional damage on me.

Q Was it a false statement that that's the only thing that's graded?

A No, ma'am, it's not. That's why I kept trying to get off of phase team.

Q Did Mr. Merritt do anything else to intentionally inflict emotional distress on you?

A Not to my knowledge, ma'am.

THE OFFICER: You said not to my knowledge; correct?

THE WITNESS: Correct. Sorry, I apologize.

BY MS. HEARNE:

Q Okay. Do you believe that in assigning you to be phase team lead, it was Calvin Merritt's intent to inflict emotional distress on you?

A Yes, ma'am.

Q Why do you think he wanted to inflict emotional distress on you?

A Because I firmly believe that in doing so, he would either get me to quit or give him enough of a paper trail to try and fire me.

Q Why would he want to fire you or get you to quit?

A I have no idea, ma'am.

Q Do you think it had anything to do with your race?
A I don't know, ma'am. I was not able to speak with the man enough to know his personal preferences on race.
Q Do you think it had anything to do with your gender?
A No, ma'am.
Q Your religion?
A No, ma'am.
Q Your age or disability?
A No, ma'am.
Q Your having taken family leave at some point?
A No, ma'am.
Q Any complaints that you had submitted?
A Oh, I believe there was plenty because of complaints I had submitted.
Q What complaints did you submit between when Calvin Merritt started work and when you were assigned to phase team in late 2022, early 2023?
A I believe I was placed on phase team initially because of a lack of ability to have anybody else do it. And then once there, my complaining about the inexperience on the team, the unfair working conditions, and the unfair deadlines further cemented the fact that

I was going to be kept there as a point to prove.
Q Okay. You mentioned unfair working conditions?
A Yes, ma'am.
Q Inexperienced team?
A Yes, ma'am.
Q And unfair deadlines?
A Yes, ma'am.
Q Did you have any other complaints to Calvin Merritt about phase team?
A Not to my knowledge, ma'am.
Q In what way were the working conditions unfair?
A The fact that my team was forced overtime over other teams because we weren't making our deadlines further exhausting mechanics as well as myself.
Q Have you already told me why you -- we already discussed the inexperienced team and I believe we already discussed the -- what you thought were the unfair deadline which is the 48 working days; right?
A Yes, ma'am. Yes, ma'am.
Q You thought that was untenable given --
A Given the team that I was provided with, ma'am, yes.
Q Okay.

CERTIFICATE OF DEPOSITION OFFICER

I, NOELLE ALLEN, the officer before whom the foregoing proceedings were taken, do hereby certify that any witness(es) in the foregoing proceedings, prior to testifying, were duly sworn; that the proceedings were recorded by me and thereafter reduced to typewriting by a qualified transcriptionist; that said digital audio recording of said proceedings are a true and accurate record to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

NOELLE ALLEN
Notary Public in and for the
State of California

[X] Review of the transcript was requested.

CERTIFICATE OF TRANSCRIBER

I, ALLISON REYNOLDS, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.



ALLISON REYNOLDS

Holley, Nicholas Alan v. Dyncorp International LLC, Et Al

Nicholas Alan Holley Job No. 7544601

E R R A T A  S H E E T

PAGE_____ LINE_____ CHANGE________________________

__________________________________________________

REASON____________________________________________

PAGE_____ LINE_____ CHANGE________________________

__________________________________________________

REASON____________________________________________

PAGE_____ LINE_____ CHANGE________________________

__________________________________________________

REASON____________________________________________

PAGE_____ LINE_____ CHANGE________________________

__________________________________________________

REASON____________________________________________

PAGE_____ LINE_____ CHANGE________________________

__________________________________________________

REASON____________________________________________

PAGE_____ LINE_____ CHANGE________________________

__________________________________________________

REASON____________________________________________

________________________________   _______________

Nicholas Alan Holley                              Date

Holley, Nicholas Alan v. Dyncorp International LLC, Et Al
Nicholas Alan Holley 7544601

ACKNOWLEDGEMENT OF DEPONENT

I, Nicholas Alan Holley, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

______________________________ ________________
Nicholas Alan Holley Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS
______ DAY OF ________________, 20___.

__________________________
NOTARY PUBLIC

<asaylor@shegerianlaw.com>

October 14, 2025

RE: Holley, Nicholas Alan v. Dyncorp International LLC, Et Al

DEPOSITION OF: Nicholas Alan Holley 7544601

The above-referenced witness transcript is available for read and sign.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those on the attached Errata Sheet.

The witness should sign and notarize the attached Errata pages and return to Veritext at errata-tx@veritext.com.

According to applicable rules or agreements, if the witness fails to do so within the time allotted, a certified copy of the transcript may be used as if signed.

Yours,

Veritext Legal Solutions